# SUPERIOR COURT
## OF THE
## STATE OF DELAWARE

FRANCIS J. JONES, JR.
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0664

June 1, 2021

Miranda D. Clifton, Esquire
Young & McNelis, PA
300 South State Street
Dover, DE 19901
*Attorney for Defendants*

Jonathon B. O'Neill., Esquire
Kimmel Carter Roman Peltz & O'Neill PA
Plaza 273 & I-95
P.O. Box 8149
Newark, DE 19714
*Attorney for Plaintiffs*

   RE: *Robert Hooven, et al. v. Ross Gimelstob,*
       **Civil Action No. N18C-01-195 FJJ**

Dear Counsel:

This is the Court's decision following a May 26, 2021 bench trial in the above matter.

This is a personal injury action that arises out of a bicycle accident which occurred on July 15, 2016, in Bethany Beach, Delaware. At some point between 10:30PM and 11:00PM, Plaintiff Robert Hooven was standing in a bike lane near Atlantic Avenue. The Defendant, Ross Gimelstob, was riding his bicycle in that same lane. There was a collision between the Plaintiff and Defendant which resulted in injuries to the Plaintiff. The primary dispute in this case was the negligence, if any, of each party.

Plaintiff's version of the events is as follows: prior to the accident, he and his wife went to move their Chevy Silverado to avoid receiving a parking ticket. Plaintiff opened the Silverado's door in order to let his wife into the driver's seat to move the vehicle. Plaintiff then closed the door. Because of the configuration of the road, there was no way for him to avoid standing in the bike lane while he opened and closed the door to the Silverado. Once he closed the door, his wife drove north bound on Atlantic Avenue. In the middle of the next block of Atlantic Avenue, Mrs. Hooven started to turn into a garage to turn around. It was her intention to park the truck on the opposite

side of the street from where Mr. Hooven was standing. The Plaintiff was standing in the bike lane during this time while he watched his wife maneuver their Silverado, with his back to oncoming bicycle traffic. After approximately 8 to 9 seconds, Plaintiff was hit by the Defendant as he was facing away from the Defendant. The Plaintiff never saw the Defendant prior to impact. Plaintiff was wearing a dark shirt, light colored shorts and white or gray tennis shoes at the time of the collision. According to the Plaintiff and his wife, there was sufficient light in the area for him to be visible.

Defendant's version of the accident is as follows: at the time of the collision, Defendant was going to his father's home in the Sea Colony complex after finishing dinner at Grotto Pizza. (The Court notes that the direct path between these two locations would have had the Defendant traveling in the opposite direction.) Defendant was riding his bicycle entirely within the bike path. Defendant had a light on the front of his bike that was operable and switched on. According to the Defendant, it was dark outside at the time of the collision, and Defendant never saw the plaintiff prior to impact. During his testimony Defendant has no explanation for why he did not see the Plaintiff prior to impact. According to Defendant, the Plaintiff was dressed in all dark clothes at the time of the accident.

There were no independent witnesses to the accident. Dr. George Lieb was called as a witness by the defense. Dr. Lieb came onto the scene shortly after the accident occurred and admitted that he did not actually see the accident. Dr. Lieb testified that while the area was dark, he could see in front of him.

In this fact finder's view, the question of negligence on the part of the Defendant comes down to whether the Defendant was keeping a proper lookout, and if so whether the light and visibility conditions permitted the Defendant to observe the Plaintiff and avoid striking him. I conclude that while the lighting conditions at the time of the accident were dark, they did not prevent the Defendant from seeing the Plaintiff who was admittedly in the bike lane for 8 to 9 seconds. Moreover, the Defendant had a light on his bike which increased his ability to see the Plaintiff in the bike lane in front of him. I find that while the Plaintiff was wearing a dark shirt, he was also wearing light colored shorts and light-colored shoes. These items of clothing should have been observable to the Defendant as he approached the Plaintiff. It is this fact finder's conclusion that the Defendant was not paying proper attention and that

he was not properly focused on the roadway in front of him. The Court is troubled by the Defendant's inability to explain why he did not see the Plaintiff prior to impact. Moreover, Defendant's testimony about where he was going to and coming from is not consistent with the geography of the two locations he identified. This casts doubt on his credibility. This Court's observation of the Defendant during his trial testimony is consistent with a conclusion that the Defendant has great difficulty paying attention and staying focused. I therefore find that the Defendant was negligent for failing to keep a proper lookout.

I now turn to the Plaintiff's negligence. There was much discussion about who had the right of way in the bike path based on Delaware law and the local laws of Bethany Beach. There is no question that the Plaintiff was permitted to be in the bike path to assist his wife in getting in and out of the Silverado given the configuration of the roadway. However, it was incumbent on the Plaintiff to observe his surroundings and get out of the bike path once his wife had left the area where she was parked. To remain in the bike path for 8 to 9 seconds at night, after his wife had exited the parking spot and looking in the opposite direction of oncoming bike traffic constitutes a failure to keep a proper lookout. These actions amount to negligence on the part of the Plaintiff.

Having determined that both parties were negligent, I must now apportion their comparative fault. I find that while the Defendant did have the right of way in the bike path, this does not mean that the Defendant was free to ride his bicycle on that lane without paying attention. It is this fact finder's conclusion that the Defendant had the last clear chance to avoid this accident by paying proper attention to his surroundings and keeping a proper lookout. Defendant failed to do either. I conclude that if the defendant had paid proper attention, it is more likely than not that the accident would not have occurred. Based on the entire record, I assess negligence on the part of the Defendant at 75% and negligence on the part of the Plaintiff at 25%.

I now turn to damages. The record on damages is essentially undisputed. As a result of the accident, Plaintiff fractured his right hip. He was taken to Beebe Hospital where he underwent right hip open reduction surgery with an internal fixation with the insertion of three screws. Plaintiff returned home where he was forced to use a walker and later a cane in order to walk. He also underwent physical therapy and received at least two steroid shots. Plaintiff underwent a second outpatient surgery

about a year after the accident to remove one of the screws. He returned to his cane for a period after this surgery. Plaintiff continues to experience pain and some limited range of motion as a result of the accident. He is unable to complete all of the household chores that he performed before the accident and his active outdoor lifestyle – particularly his ability to engage in hunting, fishing, and golfing – has been curtailed. His activities with Mrs. Hooven have also been affected. This Court agrees with the undisputed testimony of Dr. Leitman that as a direct and proximate cause of the accident, Plaintiff has sustained a permanent injury to his right hip. Mr. Hooven is 72 years old and will be forced to live with pain and limitation of his range of motion as well as the limitations of his activities for the remainder of his life. I value the pain and suffering aspect of this case at $90,000.

There is no dispute that the plaintiff incurred special damages in the amount of $13,256.33. I award these special damages.

Mrs. Hooven has made a claim for loss of consortium. She testified that her life has been affected because her husband's limitations prevent them from doing the things they liked to do before the accident. I also note and factor into Mrs. Hooven's award that she has been fearful and cautious for her husband due to his limitations from the accident. This is the classic case of an accident causing a negative impact on the golden years of a Plaintiff and his spouse due to injuries sustained from an accident. I award Mrs. Hooven $9,000 for her loss of consortium award.

Plaintiffs' damages award must be reduced by the degree of Mr. Hooven's comparative negligence in causing the accident. Accordingly, the damages awards described above will be reduced by 25%.

Given my findings I award Robert Hooven $77,442.25 against the defendant Ross Gimelstob. I award Betsy Hooven $6,750.00 against the defendant Ross Gimelstob for her loss of consortium claim.

**IT IS SO ORDERED.**

*s/ Francis J. Jones, Jr.*
Francis J. Jones, Judge

cc:     File&ServeXpress